**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**TIBAL CLARKE,**
Reg. #97273-071                                                                                              **PLAINTIFF**

v.                         Case No. 2:13-cv-00026-KGB-JTR

**ELLA TAYLOR,**
**Registered Nurse, FCI-FC, et al.**                                                              **DEFENDANTS**

**OPINION AND ORDER**

Plaintiff Tibal Clarke is a federal prisoner and brings this *pro se* action alleging that, while he was incarcerated in the Federal Correctional Institution at Forrest City ("FCI Forrest City"), he received inadequate medical care for his complaints of rectal bleeding that resulted in him receiving a delayed diagnosis of colon cancer. Mr. Clarke asserts a *Bivens*[1] Eighth Amendment claim against the individual defendants and a negligence claim against the United States of America pursuant to the Federal Tort Claims Act ("FTCA").

Before the Court is the motion to dismiss filed by separate defendant Timothy Outlaw, the former warden of FCI Forrest City (Dkt. No. 81). Mr. Clarke has not responded, despite being ordered to do so (Dkt. No. 100). Also before the Court are the motions for summary judgment filed by separate defendants Jack Vitvitsky, P.A., and Cathie Winkler, R.N., employees of an independent medical contractor at FCI Forrest City (Dkt. Nos. 83, 88). Mr. Clarke has responded to Mr. Vitvitsky's and Ms. Winkler's motions collectively (Dkt. No. 94), and Ms. Winkler has replied (Dkt. No. 99). For the following reasons, the Court grants Mr. Outlaw's motion to dismiss and Mr. Vitvitsky's and Ms. Winkler's motions for summary judgment (Dkt. Nos. 81, 83, 88). The Court has under advisement the motion for summary judgment filed by

---

[1] *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). A *Bivens* cause of action is analogous to a claim under 42 U.S.C. § 1983.

defendants Ella Taylor, R.N., Amy Barker, R.N., Kathleen Maples, R.N., Hipolito Matos, M.D., and Nader Peikar, M.D. (Dkt. No. 107).

## I. Factual Background

On April 3, 2009, Mr. Clarke was transferred from FTC Oklahoma City to FCI Forrest City (Dkt. No. 111, Ex. A, ¶2). At that time, Mr. Clarke underwent a health screen that did not indicate any abnormalities or health problems other than a prior positive tuberculosis test (*Id.*, Attch. 2). On April 13, 2009, Mr. Clarke saw Ella Taylor, a Registered Nurse, in a "sick call triage encounter" (Dkt. No. 111, Attch. 3). He requested hair clippers and a cholesterol check (*Id.*). On June 29, 2009, Mr. Clarke saw Amy Barker, another Registered Nurse, in an "[e]mergency encounter performed at Health Services" (Dkt. No. 111, Attch. 4). Mr. Clarke complained of abdominal pain and multiple episodes of diarrhea (*Id.*). Ms. Barker assessed Mr. Clarke with diarrhea and instructed him to "keep hydrated [with] 2 days off work." (*Id.*).

On July 15, 2009, Mr. Clarke underwent a full history and physical performed by Rachel Johnson, a Nurse Practitioner (Dkt. No. 111, Attch. 5). Although Mr. Clarke denied any blood in his stool, Ms. Johnson ordered a "guaiac [test] time[s] three," a test for fecal occult blood (*Id.*, Attch. 5 at pp. 5, 13). Based on this physical, Mr. Clarke was assessed with osteoarthritis, elevated blood pressure, and joint pain (*Id.*, Attch. 5 at p. 12).

On August 24, 2009, Mr. Clarke saw physician's assistant Jerald Jones for a recheck of an elevated blood-pressure reading and for complaints of knee pain (Dkt. No. 111, Attch. 6). On September 23, 2009, Mr. Clarke returned to Mr. Jones in a "sick call/triage encounter" (Dkt. No. 83-1, at 5). Mr. Clarke complained of rectal bleeding and stated that he had recently had three guaiac tests that were positive for fecal occult blood (*Id.*). After an examination, Mr. Jones

assessed "[h]emorrhage of the gastrointestinal tract, unspecified" (*Id.*). Mr. Jones noted that "[Mr. Clarke] needs CBC and eval by gastro[enterologist]" (*Id.*).

On December 2, 2009, Mr. Vitvitsky, a physician's assistant, treated Mr. Clarke in a sick call/triage encounter (Dkt. No, 83-1, at 1, 7). During that visit, Mr. Clarke complained that, for the last three months, he had observed blood in his stool every time he used the toilet. He also reported taking an aspirin a day for a knee injury, which Mr. Vitvitsky noted "may be contributing to problem." (*Id.* at 7). Mr. Vitvitsky recorded: "Rectal stool sample showed positive for occult blood with sample only from rectal canal — [Mr. Clarke] was too uncomfortable to push all the way in without lubrication generous on glove. Two more cards to be returned in a few days." (*Id.*). Mr. Vitvitsky assessed "[h]emorrhage of the gastrointestinal tract, unspecified" (*Id.* at 8). Mr. Vitvitsky's plan of care included a CBC blood test and for Mr. Clarke to follow up at sick call as needed. Mr. Vitvitsky further recorded under his plan of care: "Await (continue) for consult regarding blood in stool, return two cards Friday, continue Milk of Mag to provide regularity. Blood tests being ordered." (*Id.*).

Mr. Clarke returned to Mr. Vitvitsky on December 4, 2009. Both of Mr. Clarke's stool sample cards tested positive for occult blood (Dkt. No. 83-1, at 9). Mr. Vitvitsky noted that Mr. Clarke now had a total of six stool samples that were positive for blood and listed gastroenterology consultation under his plan of care (*Id.*, at 10). Mr. Vitvitsky states that he did see Mr. Clarke as a patient after December 4, 2009 (Dkt. No. 91, ¶ 4), and Mr. Clarke does not claim otherwise in his response to Mr. Vitvitsky's motion for summary judgment.

On December 22, 2009, Mr. Clarke saw Ms. Winkler, a Registered Nurse, in a "health services encounter" (Dkt. No. 88-1, at 1). Ms. Winkler noted: "Rectal bleed, bright red over normal stool. Refused physical exam. Lab results from previous exams not available. Tx with

rectal steroid, if available. Obtain results . . . Tx hypermotility GI distress. Refer to GI specialist." (*Id.*). Ms. Winkler prescribed a hemorrhoid suppository, reflux medicine, and a high-fiber diet (*Id.*). She instructed Mr. Clarke to report bloating or abdominal pain (*Id.*). Ms. Winkler states in her summary judgment papers that she did not see Mr. Clarke again until August 26, 2010 (Dkt. No. 89, ¶ 10). Mr. Clarke does not challenge this in his response to Ms. Winkler's motion for summary judgment.

Over the next few months, Mr. Clarke saw other Bureau of Prison ("BOP") medical personnel and continued to complain of rectal bleeding (Dkt. No. 111, Attchs. 13-15). On April 22, 2010, Mr. Clarke was seen by a general surgeon who recommended a colonoscopy and an EGD (*Id.*, Attch. 16). On August 20, 2010, Mr. Clarke underwent a colonoscopy and an EGD, which showed a rectal mass (*Id.*, Attch. 20). The biopsy results indicated a rectal carcinoma with "multiple lymph nodes invasion, also positive for h-pylori" (*Id.*, Attch. 21). BOP physician Nader Peikar initiated a medical transfer for Mr. Clarke, and, on September 17, 2010, Mr. Clarke was transferred to a BOP medical facility in Butler, North Carolina (*Id.*, Attch. 24).

## II. Mr. Outlaw's Motion To Dismiss

Mr. Outlaw moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Mr. Clarke has not stated a viable Eighth Amendment claim against him and that he is entitled to qualified immunity. Although the Court ordered Mr. Clarke to respond to Mr. Outlaw's motion (Dkt. No. 100), he has failed to do so. For that reason alone, Mr. Clarke's claims against Mr. Outlaw are subject to dismissal pursuant to Local Rule 5.5(c)(2) for failing to comply with the Court's Order. However, the Court will consider the merits of Mr. Outlaw's motion to dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citation omitted). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

As a threshold matter, Mr. Outlaw's motion correctly points out that Mr. Clarke's official capacity claim for damages against him is barred by the doctrine of sovereign immunity. *See Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) ("the real party in interest in an official-capacity suit is the governmental entity and not the named official."). Moreover, the Western District of Oklahoma previously dismissed Mr. Clarke's official capacity claims against the individual defendants when transferring the case to this District (Dkt. No. 21).

As to Mr. Clarke's individual capacity claim against Mr. Outlaw, Mr. Outlaw argues that Mr. Clarke's allegations amount to a claim of *respondeat superior* or supervisory liability. A supervisor may not be held vicariously liable in a *Bivens* or § 1983 action for the constitutional violations of their subordinates on a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676.

Rather, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* "It is settled . . . that 'a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.'" *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins,* 825 F.2d 1276, 1277 (8th Cir. 1987)); *see also Crooks v. Nix*, 872 F.2d 800, 803 (8th Cir. 1989) (stating that a warden or prison director lacking professional medical expertise would not be liable on agency principles for the alleged wrongful diagnostic judgment of a physician).

In his complaint, Mr. Clarke alleges that "Prison Administration failed to provide medical treatment that addressed Plaintiff's medical symptoms with deliberate indifference." (Dkt. No. 1, at 6). He further alleges that "executive staff at the institution" provided "meaningless responses" in the administrative grievance process (*Id.*, at 15). These conclusory allegations of supervisory liability are not supported by any accompanying facts, and there are no allegations suggesting what role, if any, Mr. Outlaw played in Mr. Clarke's medical treatment or the grievance process. Mr. Clarke's supervisory liability claims against Mr. Outlaw fail to meet the pleading requirements set forth in *Iqbal* and *Twombly.*

Because Mr. Clarke's allegations against Mr. Outlaw do not amount to a constitutional violation, Mr. Outlaw is entitled to qualified immunity. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812-13 (8th Cir. 2008) (stating that qualified immunity extends to *Bivens* actions and, if the allegations do not amount to a constitutional violation, there is no necessity for further inquiries concerning qualified immunity). The Court grants Mr. Outlaw's motion to dismiss (Dkt. No. 81), and Mr. Clarke's claims against Mr. Outlaw are dismissed without prejudice.

### III. Mr. Vitvitsky's And Ms. Winkler's Motions For Summary Judgment

Mr. Vitvitsky and Ms. Winkler move for summary judgment. Both assert that Mr. Clarke has not met his burden of showing deliberate indifference to his medical needs and that, therefore, they are entitled to qualified immunity (Dkt. Nos. 83, 88). Ms. Winkler further asserts that, to the extent Mr. Clarke may allege a medical malpractice claim under state law, Mr. Clarke's claim is barred by the statute of limitations and that Mr. Clarke has not met his burden of proof to establish a medical malpractice claim under Arkansas law (Dkt. No. 88).

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

To prevail on his Eighth Amendment inadequate medical care claims against Mr. Vitvitsky and Ms. Winkler, Mr. Clarke must prove that: (1) he had objectively serious medical needs; and (2) those two defendants subjectively knew of, but deliberately disregarded, those serious needs. *See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *see generally Estelle v. Gamble*, 429 U.S. 97 (1976) (establishing that deliberate indifference to a serious medical needs constitutes a violation of the Eighth Amendment).

The parties do not dispute that Mr. Clarke's rectal bleeding was an objectively serious medical need. Thus, the issue is whether Mr. Vitvitsky and Ms. Winkler were deliberately indifferent in the medical treatment they rendered to Mr. Clarke. Deliberate indifference is a higher standard than gross negligence and "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001) (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998)). "There must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994)).

Mr. Vitvitsky argues that he saw Mr. Clarke only twice, on December 2 and 4, 2009. According to his medical notes, he performed a physical examination of Mr. Clarke, ordered a complete blood count, requested that Mr. Clarke submit additional stool samples, and requested a consultation with a gastroenterologist. In his supporting affidavit, Mr. Vitvitsky states that, shortly after December 4, 2009, he was transferred to another building at FCI Forrest City and never treated Mr. Clarke again (Dkt. No. 83-1, ¶13). Mr. Vitvitsky adds that he "had no control over when or if an inmate qualified for or received outside consultations by a specialist" and that he "played no role in determining which [BOP] inmates received outside consultants by specialists or when such consultations were to occur." (*Id.*, ¶¶ 15, 17). In addition, Mr.

Vitvitsky has submitted a letter from Dr. L. F. Anderson, a board-certified family practitioner in Lonoke, Arkansas, in which Dr. Anderson opines that Mr. Vitvitsky acted within the standard of care in treating Mr. Clarke (Dkt. No. 83-2).

In her summary judgment papers, Ms. Winkler states that she only saw Mr. Clarke once prior to his colonoscopy on December 22, 2009. According to her notes, Ms. Winkler attempted to examine Mr. Clarke, prescribed a hemorrhoid suppository and reflux medicine, and instructed him to report promptly any dark tarry stool. (Dkt. No. 88-1, at 1). Ms. Winkler recorded in her notes that Mr. Clarke needed to be seen by a gastroenterology specialist (*Id.*; *see* Dkt. No. 89, at 1-3). In her statement of material facts to which she contends there is no genuine dispute, Ms. Winkler states that BOP policy only allows her to recommend a consultation with a specialist, Ms. Winkler states that she has no role or other involvement in determining if or when an inmate is seen by a specialist (Dkt. No. 89, at 3).

In his response to Mr. Vitvitsky's and Ms. Winkler's motions for summary judgment, Mr. Clarke argues that both Mr. Vitvitsky and Ms. Winkler: (1) should have ordered a "CEA" blood test for a cancer marker which would have been the "normative procedure" for a patient reporting rectal bleeding; and (2) had a "medical/ethical responsibility" to follow up on their recommendations for a gastroenterologist consultation (Dkt. No. 94, ¶8). Mr. Clarke has come forward with no evidence to substantiate his subjective opinion that Mr. Vitvitsky and Ms. Winkler should have ordered additional blood testing, much less that their failure to do so was deliberate indifference. *See Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) ("[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation"). The undisputed facts establish that both Mr. Vitvitsky and Ms. Winkler had brief and limited medical contact with Mr. Clarke, prescribed medication for his problems, and noted

referrals to a gastroenterology specialist. Nothing about these facts suggests that Mr. Vitvitsky or Ms. Winkler were deliberately indifferent in the medical treatment they provided to Mr. Clarke.

Mr. Vitvitsky and Ms. Winkler both fail to address the reason for the nine-month delay between their notations that Mr. Clarke needed to be seen by a gastroenterologist and his colonoscopy on August 20, 2010. The Court acknowledges that Mr. Vitvitsky and Ms. Winkler both claim they did not treat Mr. Clarke again during that period and maintain that they had no role or other involvement in determining if or when Mr. Clarke was seen by a specialist. However, when Mr. Clarke pursued this matter through the BOP administrative grievance process, an "administrative remedy response" from a warden at FMC Butler explained the reason for this delay as follows: "A referral [by Mr. Jones] was made to Gastroenterology on September 23, 2009; however local policy, at FCI Forrest City, requires patients who require a colonoscopy [to] see General Surgery. This referral was corrected on February 22, 2010, and you were seen by General Surgery on April 23, 2010. The General Surgeon ordered a colonoscopy which was performed August 20, 2010." (Dkt. No. 1-1, at 2).

Assuming that FCI policy did require that a patient with rectal bleeding and blood in his stool be referred to general surgery, rather than a gastroenterologist, such a referral error by Mr. Vitvitsky and Ms. Winkler does not establish deliberate indifference. Further, Mr. Vitvitsky only saw Mr. Clarke twice over three days, and Ms. Winkler only saw Mr. Clarke once prior to August 2010. Mr. Clarke has not controverted Mr. Vitvitsky's and Ms. Winkler's statements that they have no role in determining whether an inmate sees a specialist. Viewing the evidence and facts in the light most favorable to Mr. Clarke, Mr. Vitvitsky's and Ms. Winkler's alleged

failures to follow up on their recommendations for Mr. Clarke to see a gastroenterologist do not rise to the level of deliberate indifference.

The Court finds no genuine issue of material fact on Mr. Clarke's claims of deliberate indifference against Mr. Vitvitsky and Ms. Winkler, and Mr. Vitvitsky and Ms. Winkler are entitled to qualified immunity on Mr. Clarke's Eighth Amendment claims against them. The Court grants Mr. Vitvitsky's and Ms. Winkler's motions for summary judgment (Dkt. No. 83, 88).

Ms. Winkler argues that, to the extent Mr. Clarke "may assert" a state-law medical negligence claim against her under the Arkansas Medical Malpractice Act, she is entitled to summary judgment (Dkt. No. 88, ¶4). Although Mr. Clarke has asserted a negligence claim against the government pursuant to the FTCA (Dkt. No. 1, at 2-3), his complaint does not plead state law claims for medical negligence against the individual defendants. Accordingly, the Court need not consider Ms. Winkler's argument on this issue.

*   *   *

For the foregoing reasons, the Court grants Mr. Outlaw's motion to dismiss (Dkt. No. 81) and dismisses without prejudice Mr. Clarke's claims against Mr. Outlaw. The Court also grants Mr. Vitvitsky's and Ms. Winkler's motions for summary judgment (Dkt. Nos. 83, 88) and dismisses with prejudice Mr. Clarke's claims against Mr. Vitvitsky and Ms. Winkler. The Court has under advisement the motion for summary judgment filed by defendants Ella Taylor, R.N., Amy Barker, R.N., Kathleen Maples, R.N., Hipolito Matos, M.D., and Nader Peikar, M.D. (Dkt. No. 107). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Opinion and Order would not be taken in good faith.

SO ORDERED this the 29th day of September, 2014.

_____
Kristine G. Baker
United States District Judge